ORIGINAL

Robert S. Green (CA State Bar No. 136183)
Charles D. Marshall (IL State Bar No. 6256345)
**GREEN WELLING LLP**
595 Market Street, Suite 2750
San Francisco, CA 94105
Telephone: (415) 477-6700
Facsimile: (415) 477-6710

Attorneys for Plaintiff



F I L E D
3 - 13 - 2009
MAR 1 3 2009

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| MICHAEL A. PENDLETON on behalf of himself and all others similarly situated,<br><br>        Plaintiff,<br><br>v.<br><br>CHASE BANK USA, N.A.,<br><br>        Defendant. | ) Case No.<br>)<br>) **CLASS ACTION COMPLAINT**<br>)<br>) **COMPLAINT FOR VIOLATION OF:**<br>)<br>) **1. BREACH OF CONTRACT;**<br>) **2. BREACH OF IMPLIED**<br>) **COVENANT OF GOOD FAITH**<br>) **AND FAIR DEALING;**<br>) **3. DECLARATORY RELIEF;**<br>) **4. VIOLATION OF TRUTH IN**<br>) **LENDING ACT 15 U.S.C. 1601 ET**<br>) **SEQ.;**<br>) **5. NEGLIGENT**<br>) **MISREPRESENTATION; and**<br>) **6. UNJUST ENRICHMENT**<br>) **/RESTITUTION.**<br>)<br>)<br>)<br>) JURY TRIAL DEMANDED<br>)<br>) **09CV1590**<br>) **JUDGE ANDERSEN**<br>) **MAG.JUDGE COX** |

Plaintiff, on behalf of himself and all others similarly situated, hereby submits the following class action complaint. Plaintiff, on behalf of himself and all others similarly situated, upon personal knowledge as to his own acts and status, and upon information and belief as to all other matters, alleges as follows:

## NATURE OF THE ACTION

1.    This class action seeks to remedy efforts by Defendant Chase Bank USA, N.A. ("Chase") to force customers to pay APRs and minimum monthly payment amounts which are higher than they bargained for in connection with their agreements with Chase.

2.    For roughly four years, Chase has been offering cardholders a guaranteed low annual percentage rate ("APR") for amounts they transfer from other credit cards to their Chase accounts, or for amounts drafted for any purpose on what Chase refers to as a "balance transfer check." To induce cardholders to increase the amount of the credit they held at Chase, Chase promised that balances incurred under the offer would remain at a specified low, fixed APR —generally between 2.99% to 4.99%—until the balance was paid off. Relevant to Plaintiff are two separate credit card accounts for which he was offered fixed APRs of 2.99% and 3.99%. As consideration, cardholders, including Plaintiff, paid a transaction fee amounting to the greater of $5 or 3% of the balance incurred under the offer.

3.    In November 2008, Defendant Chase reneged on its promise by charging a $10 per month finance charge against these accounts—thereby raising the APRs—and raising the minimum monthly payment. Chase uses these oppressive and improper terms as leverage to pressure cardholders into even higher APR cards (with the "benefit" of no raise in minimum monthly payment) or to pay the balances in full. According to Chase, it implemented these changes because the promised low APRs "are not profitable enough."

4.    In doing so, Chase consistently misrepresents the facts applicable to these accounts, breaches the agreement that the APRs remain fixed until paid, and violates the Truth in Lending Act. For example, the "Important Notice Regarding Changes to Your Account Terms"

falsely states that, "Your APRs will not be impacted by these changes;" however, the APR on each card is actually increased because the new $10 charge is a finance charge.

5.      Chase's has no legal basis for its conduct or the change in terms. Chase unilaterally, unfairly and illegally changed the terms of the loans by violating its promise of a fixed rate until paid and by increasing the effective APRs. In addition, Chase increased the minimum monthly payments on these accounts in an attempt to unfairly accelerate repayment of outstanding balances and to increase immediate revenues.

6.      As a result, Plaintiff and similarly situated Chase customers have been damaged by, among other things, having to pay higher APRs than the fixed APRs promised by Chase, or by being presented with false information about their options at Chase or by incurring the costs and effort of transferring their accounts.

7.      Chase has failed to fulfill the promises made to its customers and has contravened its representations, including the very representations that induced customers to incur debt, thereby breaching its agreements and fixed APR offers with customers and violating common and statutory law prohibiting false advertising and unfair and fraudulent business practices.

8.      Chase further failed to adequately disclose finance charges levied in connection with these accounts, in violation of the Truth in Lending Act, 15 U.S.C. § 1601 et. seq. ("TILA").

9.      Plaintiff, on behalf of himself and all others similarly situated, seek declaratory relief, and injunctive relief to stop Chase from overcharging its customers, as well as damages, restitution, disgorgement of profits, and costs of suit as may be appropriate.

## JURISDICTION  AND VENUE

10.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1640(e), and pursuant to 28 U.S.C. 1332(d), since there are at least 100 class members in the proposed class, the combined claims of proposed class members exceed $5,000,000 exclusive of interest and costs, and there are numerous class members who are citizens of states other than Defendant's state of citizenship, which is New York or Delaware.

11.     This Court has personal jurisdiction over Chase because a substantial portion of the wrongdoing alleged in this Complaint took place in this state, Chase is authorized to do business here, Chase has sufficient minimum contacts with this state, and/or Chase otherwise intentionally avails itself of markets in this state through the promotion, marketing and sale of its products and services in this state, to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

12.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(a) because Plaintiff resides here, because Chase has hundreds, if not thousands, of customers in this District, because Chase has received substantial fees from consumers who hold accounts here, and because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## PARTIES

13.     Plaintiff Michael A. Pendleton is over the age of 18 and a resident of Oak Forest, Illinois.

14.     Chase is a national banking association, headquartered in New York, New York. Chase is a wholly-owned subsidiary of JP Morgan Chase & Co. ("JPM"), a leading global financial services firm with assets of approximately $2.3 trillion. Chase is the legal entity for JPM's credit card business.

15.     Chase is one of the largest credit card companies in the United States, with at least hundreds of thousands of credit card customers throughout the United States and at least tens of thousands of credit card customers throughout the state of Illinois.

## GENERAL ALLEGATIONS

16.     Roughly four years ago, Chase began to offer customers the opportunity to transfer balances from other credit cards to their Chase credit card accounts, or use "balance transfer checks" for cash or purchases at low APRs which it represented as fixed" and lasting "until the balance is paid off." The offers were initiated through balance transfer offers and

"blank checks" Chase sends from time to time to its customers and are referred to throughout this complaint as "Loans."

17.     During the relevant time period, Chase offered Loans carrying fixed APRs ranging from 2.99% to 4.99% for the life of the Loan. As consideration for the Loan, Chase charged a transaction fee, typically 3% of the transaction amount or $5 at a minimum.

18.     Not satisfied with its return on these low interest Loans, and in an effort to squeeze additional funds from its customers, Chase decided to unilaterally, illegally and unfairly change the terms of cardholders accounts. These changes were intended to, and had the effect of, forcing cardholders to immediately pay their balances in full, increasing the applicable APRs for cardholders, and/or forcing cardholders to transfer their existing Loan balances to accounts with higher and variable APRs.

19.     Beginning in November 2008, Chase sent "notices" to each cardholder notifying them of the following changes to the terms of their agreements:

- A new "Account Service Charge" of $10 per month will be applied to each cardholder's account.
- Each cardholder's minimum payment (i.e. the amount they need to pay each month to not be in default) was increased by 150%—from 2% to 5% of the ending balance on their monthly statement.

A true and correct exemplar of the "notice" sent by Defendant is attached hereto.

20.     These new terms were not previously disclosed to cardholders, either in Chase's Loan offer letters sent to cardholders or otherwise.

21.     The "notices" further state that these new and unfair changes will apply "unless you notify us that you wish to close your account within 30 days...and at the same time, you pay your outstanding balance in full." Chase did not otherwise give Cardholders the option to opt out of the changes set forth in the "notices."

22.     The "notices" further state: "Important: Your APRs will not be impacted by these changes." That assertion is false.

23.     The monthly $10 "Account Service Charge," which Chase refers to as a "finance charge" in its monthly billing statements and elsewhere in the "notice" refers to as a "Service Charge-Finance Charge," is effectively an increase to the low APR that Chase falsely promised would apply "until balance is paid in full."

24.     For financing purposes, Chase carries the monthly $10 finance charge as a credit card purchase even though it was imposed as a charge incurred in connection with cardholders' balance transfer or check loans. This is true even if cardholders have no purchases or charges other than their initial promotional amount.

25.     Chase's unilateral changes to the terms of cardholders' accounts, described herein, are not consistent with sound banking judgment or safe and sound banking principles.

26.     Chase credit card accounts are generally governed by a "Cardmember Agreement," and in some respects, these promotional Loan offers are as well. The "Cardholders Agreement" gives Chase the right to revoke the promotional APRs in the event of default, but does not—absent a default—give Chase the right to change APRs which are fixed "until the balance is paid off."

27.     When Plaintiff complained about the changes to his accounts as set forth in the "notices," Chase presented him with two options to avoid such changes: (1) paying the account balances in full immediately (which was the only option presented in the "notice"); or (2) agreeing to a new, higher APR of 7.99% for a limited, two year duration, with Chase retaining broad discretion to significantly increase that APR after the two period expires.

28.     Thus, by threatening to effectively raise cardholders' APRs through the imposition of the monthly $10 finance charge and dramatically increase their minimum monthly payments, Chase sought to pressure cardholders to pay their entire loan balances in full immediately or transfer their loan balances to accounts with significantly higher and variable APRs.

29.     As a result of the conduct described above, Plaintiff and other members of the Class, defined below, suffered harm in that they were subjected to APRs and/or minimum

payments that were higher than promised by Chase, were subjected to false and illegal statements in an attempt to force them to convert to higher APR credit accounts and, in most cases, were forced to pay Chase more than they bargained for. Chase has been substantially and unjustly enriched as a result of the conduct describe above.

**Plaintiff's Experience**

30. Plaintiff Michael A. Pendleton has two separate accounts impacted by the conduct described in this complaint, the oldest of which he has held for over 30 years. During that time, he received numerous promotional APR offers from Chase.

31. In or about November 2004 and again in December 2006, based on Chase's representations Plaintiff accepted offers from Chase to conduct balance transfer Loans at fixed APRs of 3.99% until the balance on the loans were paid off. Plaintiff cannot recall the exact amount of the transfers, but as of 01/14/09 the outstanding balance for those Loans were $4,464.25 and $9,032.11. As consideration for the Loans, Chase charged, and Plaintiff paid transactions fees. Recently, these fees have been the greater of $5 or 3% of the total amount transferred, but prior offers carried lower, capped fees.

32. In or about May 2005, based on Chase's representations Plaintiff accepted an offer from Chase to conduct a balance transfer Loan for approximately $10,400 at a fixed APR of 2.99% until the balance on the Loan was paid off. As consideration for the offer, Chase charged, and Plaintiff paid a transaction fee. Recently, these fees have been the greater of $5 or 3% of the total amount transferred, but prior offers carried lower, capped fees.

33. The offers to Plaintiff did not indicate that a service or finance charge would or could be applied, or that Plaintiff's APRs would or could be increased, if Plaintiff was not in default.

34. Since the time these offers were accepted by Plaintiff, he made regular monthly payments and has never been in default.

35. In or around November 2008, Plaintiff received "notices," along with his monthly billing statements, that: (1) Chase was imposing a $10 monthly "Account Service Charge" in

connection with each account; and (2) the minimum monthly payment on each account was being increased from 2% to 5% of the outstanding balance. The "notices" further stated that: "Important: Your APRs will not be impacted by these changes." Additionally, the "notices" stated that the changes would apply "unless you notify us that you wish to close your account within 30 days…and at the same time, you pay your outstanding balance in full."

36.    Plaintiff spoke with Chase customer service representatives on various occasions to discuss the changes to the accounts, and the Chase representatives stated that Plaintiff would be subjected to these changes going forward unless he either: (1) paid off their loan balances in full; or (2) agreed to a new, higher APR of 7.99% for a limited, two year duration, with Chase retaining broad discretion to significantly increase that APR after the two period expires. Chase representatives also told Plaintiff that the changes had nothing to do with his credit history, but that it was an action Chase needed to take due to "economic conditions." Another Chase representative told Plaintiff that Chase was paying more to borrow money than Plaintiff was paying and that it was no longer profitable to keep his accounts, so Chase's goal was to force consumers like Plaintiff to pay off his account sooner.

37.    Plaintiff, faced with a unilateral and improper increase in both the APR and the minimum monthly payment on his accounts, was coerced to leave the promised low, fixed 2.99% and 3.99% APRs and agree to the new, limited duration 7.99% APRs.

38.    None of the claims for relief asserted in this controversy are subject to arbitration or any valid arbitration agreement. To the extent that Defendant asserts that such claims are subject to an arbitration agreement, Plaintiff, on behalf of himself and the Class—as defined below—seeks declaratory relief in the form of a finding that such a purported agreement is void and unenforceable as against public policy and/or unconscionable.

## CLASS ALLEGATIONS

39.    Plaintiff bring this action pursuant to Federal Rule of Civil Procedure 23, on behalf of himself and others similarly situated. The "Class" is defined as follows:

All persons or entities who reside in the State of Illinois and who entered into a loan agreement with Chase, whereby Chase promised a fixed APR of between 2.99% to 4.99% until the loan balance was paid in full, but who have been charged, or notified by Chase that they will be charged, a $10 monthly "Account Service Charge" in connection with their accounts and/or required to make monthly minimum payments higher than 2% of their outstanding loan balance.

40.    The following persons shall be excluded from the Class: (1) Chase and its subsidiaries and affiliates; (2) all persons who make a timely election to be excluded from the proposed Class; (3) governmental entities; and (4) the judge(s) to whom this case is assigned and any immediate family members thereof.

41.    Plaintiff reserves the right to modify or amend the Class definition(s) before the Court determines whether certification is appropriate.

42.    Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of his claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

43.    Numerosity Under Rule 23(a)(1). The members of the Class are so numerous that individual joinder of all the members is impracticable. Plaintiff is informed and believes that there are at least thousands of Chase card holders who have been damaged by Chase's unfair, deceptive and illegal conduct alleged herein. The precise number of class members and their addresses is unknown to Plaintiff; however, they are readily available from Chase's records. Class members may be notified of the pendency of this action by mail, supplemented (if deemed necessary or appropriate by the Court) by published notice.

44.    Commonality Under Rule 23(a)(2). This action involves common questions of law and fact, including, but not limited to, the following:

a.    Whether Chase's imposition of the monthly "Service Charge-Finance Charge" is effectively an increase in the APR members of the Class are required to pay in connection with their loan agreements;

b.    Whether Chase was permitted, under the terms of its Loan agreements with members of the Class to impose the monthly "Service Charge-Finance Charge";

     c.     Whether Chase provided an adequate "opt out" mechanism for cardholders who did not agree to the monthly "Service Charge-Finance Charge" and/or increase in minimum monthly payments;

     d.     Whether Chase failed to adequately disclose finance charges in violation of TILA.

     e.     Whether Chase has been unjustly enriched as a result of the conduct complained of herein;

     f.     Whether Chase's conduct complained of herein is intentional and knowing;

     g.     Whether Chase's conduct complained of herein is reckless;

     h.     Whether Plaintiff and members of the Class are entitled to damages, restitution, disgorgement of profits, declaratory relief, and/or injunctive relief, as a result of Chase's conduct complained of herein; and

     I.     Whether the arbitration and class action waiver provision contained in Chase's Cardmember Agreement are contrary to public policy, unconscionable, and unenforceable.

45.     Typicality Under Rule 23(a)(3). The named Plaintiff's claims are typical of, and not antagonistic to, the claims of the members of the Class. Plaintiff and the members of the Class he seeks to represent have all been deceived and damaged by Chase's deceptive conduct and breach.

46.     Adequacy of Representation under Rule 23(a)(4). Plaintiff is an adequate representatives of the Class because his interests do not conflict with the interests of the Class that he seeks to represent; he has retained counsel competent and experienced in complex class action litigation; and Plaintiff intends to prosecute this action vigorously. The interests of the Class will be fairly and adequately protected by Plaintiff and his counsel.

47.   <u>The Class Can Be Properly Maintained Under Rules 23(b)(2) and (c)</u>.  Chase has acted or refused to act, with respect to some or all issues presented in this Complaint, on grounds generally applicable to the Class, thereby making appropriate final injunctive relief with respect to the Class as a whole.

48.   The Class Can Be Properly Maintained Under Rules 23(b)(3) and (c). Questions of law and fact common to the members of the Class predominate over any questions affecting only individual members with respect to some or all issues presented in this Complaint.  A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  Individual litigation of the claims of all class members is impracticable because the cost of litigation would be prohibitively expensive for each class member and would impose an immense burden upon the courts.  Individualized litigation would also present the potential for varying, inconsistent, or contradictory judgments and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same complex legal and factual issues.  By contrast, the conduct of this action as a class action, with respect to some or all of the issues presented in this Complaint, presents fewer management difficulties, conserves the resources of the parties and of the court system, and is the only means to protect the rights of all class members.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION

### (Breach of Contract)

49.   Plaintiff, on behalf of himself and the Class, re-allege and incorporate by reference each and every allegation set forth in the preceding paragraphs, as though they are alleged in full herein.

50.   The material terms of Chase's Loan agreements with Plaintiff and the members of the Class included Chase's promise that a fixed APR of between 2.99% and 4.99% APR would remain in effect "until balance paid in full."

51.     Plaintiff and members of the Class gave consideration that was fair and reasonable, and have performed all conditions, covenants, and promises required to be performed under their respective balance transfer Loan agreements with Chase.

52.     As alleged herein, Chase breached its contractual promise to provide Loans at fixed APRs between 2.99% and 4.99% APR "until balance paid in full" by imposing monthly finance charges, which effectively increased the APR that Chase promised would apply "until balance paid in full."

53.     By reason of Chase's breaches, Plaintiff and members of the Class were subjected to higher APRs, and were forced to pay more to Chase, in connection with their Loans than they bargained for, and have suffered damages in an amount to be proven at trial.

54.     Chase directly benefitted from, and was unjustly enriched by, its contractual breaches alleged herein.

### SECOND CAUSE OF ACTION

### (Breach of Implied Covenant of Good Faith and Fair Dealing)

55.     Plaintiff, on behalf of themselves and the Class, re-alleges and incorporates by reference each and every allegation set forth in the preceding paragraphs, as though they are alleged in full herein.

56.     Under common law, a covenant of good faith and fair dealing is implied into every contract.

57.     Chase violated this covenant of good faith and fair dealing in its Loan agreements with Plaintiff and members of the Class by: (a) unilaterally imposing unfair and unconscionable changes to the APRs and other loan terms; (b) coercing and/or attempting to coerce Plaintiff and members of the Class to pay their entire Loan balances in full prematurely; and (c) coercing and/or attempting to coerce Plaintiff and members of the Class to transfer their Loan balances to accounts with higher and variable APRs.

58.     Plaintiff and members of the Class performed all, or substantially all, of the significant duties required by their Loan agreements with Chase.

CLASS ACTION COMPLAINT

59.    The conditions required for Chase's performance under the Loan agreements had occurred.

60.    Chase unfairly interfered with the right of Plaintiff and Class members to receive the benefits under their Loan agreements with Chase.

61.    Plaintiff and the Class have been damaged by Chase's breach of the implied covenant of good faith and fair dealing in an amount to be proven at trial.

## THIRD CAUSE OF ACTION

### (Declaratory Relief)

62.    Plaintiff, on behalf of himself and the Class, re-alleges and incorporates by reference each and every allegation set forth in the preceding paragraphs, as though they are alleged in full herein.

63.    A dispute has arisen between Plaintiff and the Class and Defendants over Chase's implementation of its $10 monthly finance charge and its impact on Class members' APRs.

64.    Plaintiff contends that he did not agree to arbitration or to waive their rights to bring claims on behalf of a class. To the extent Defendant asserts that the claims of Plaintiff and the Class *are* subject to an arbitration agreement, Plaintiff seeks declaratory relief in the form of a finding that such a purported agreement is void and unenforceable as against public policy and/or unconscionable in at least the following respects:

      a.    To the extent Defendant asserts that an arbitration agreement waives Plaintiff's rights to bring his claims on behalf of the Class, such an arbitration agreement is unconscionable and unenforceable.

      b.    To the extent any such waiver of class claims exists in an arbitration agreement, it removes the only practicable way for consumers to deter and redress the wrongs alleged in this Complaint, thus making such an arbitration agreement unconscionable and unenforceable.

      d.    To the extent Defendant asserts an arbitration agreement that is a consumer contract of adhesion presented to Plaintiff and the Class in a

CLASS ACTION COMPLAINT

take-it-or-leave-it manner, and Defendant maintains superior bargaining

over Plaintiff and the Class, such an arbitration agreement is

unconscionable and unenforceable.

65.     Plaintiff seeks a declaratory relief from this court in the form of an order that any

purported arbitration agreement between the Class and Defendant is void and unenforceable.

### FOURTH CAUSE OF ACTION

### (Truth In Lending Act, 15 U.S.C. § 1601 et. seq.)

66.     Plaintiff, on behalf of himself and the Class, re-alleges and incorporates by

reference each and every allegation set forth in the preceding paragraphs, as though they are

alleged in full herein.

67.     Pursuant to TILA (15 U.S.C. § 1601 et seq.) and the regulations promulgated

thereunder, Chase was required to make certain "Initial Disclosures" in connection with Class

member's check loans(s), setting forth, among other things, "the circumstances under which a

finance charge will be imposed and an explanation of how it will be determined." 12 C.F.R.

§ 226.6.

68.     Beginning in approximately November 2008, Chase stated in its notice of change

of terms that in January 2009, it would begin assessing a $10 monthly finance charge in

connection with each Class member's account.  This charge constitutes a "finance charge" under

TILA, such that Chase was required to disclose and explain it as part of its "Initial Disclosures"

made in connection with the original promotional solicitation. 15 U.S.C. § 1605(a), 12 C.F.R.

§ 226.6.

69.     Chase failed to disclose the $10 monthly finance charge, or explain how it would

be determined, in its Initial Disclosures, in violation of TILA.

70.     Chase's failure to disclose the $10 monthly charge and to explain how it would be

determined was intentional.

71.     Chase's change in terms notice falsely states that, "Your APRs will not be

impacted by these changes." Additionally, Chase's periodic statements misstate the APR

13

applicable to the purchase amount and to the promotional amount by attributing 100% of the $10 monthly finance charge solely to the purchases APR without regard to whether there are purchases or not.

72.    As a result of Chase's violations of TILA, Plaintiff and Class members have been harmed and are entitled to injunctive relief and to recover damages and attorneys' fees. 15 U.S.C. § 1640.

**FIFTH CAUSE OF ACTION**

**(Negligent Misrepresentation)**

73.    Plaintiff, on behalf of himself and the Class, re-alleges and incorporates by reference each and every allegation set forth in the preceding paragraphs, as though they are alleged in full herein.

74.    As alleged herein, in the course of conducting its business of providing credit products and services, Chase falsely represented to Plaintiff and members of the Class that:

(a)    fixed APRs of between 2.99% to 4.99% APR would apply to their promotional loans "until balance paid in full," and

(b)    their APRs "will not be impacted by" the changes to the Loan terms set forth in Chase's "notices."

75.    Chase's misrepresentations were supplied for the purpose of affecting Plaintiff's and Class members' financial decisions.

76.    Chase had no reasonable grounds for believing that its misrepresentations were true.

77.    Chase failed to exercise reasonable care and/or diligence in communicating its misrepresentations.

78.    Chase's misrepresentations were objectively material to the reasonable consumer, and therefore reliance upon such representations may be presumed as a matter of law.

79.    Chase intended that Plaintiff and members of the Class would rely on its misrepresentations.

14

CLASS ACTION COMPLAINT

80.     Plaintiff and members of the Class reasonably and justifiably relied to their detriment on Chase's misrepresentations.

81.     As a proximate result of Chase's misrepresentations, Plaintiff and members of the Class were damaged in an amount to be proven at trial.

82.     Chase directly benefit from, and was unjustly enriched by, its misrepresentations.

**SIXTH CAUSE OF ACTION**
**(Unjust Enrichment/Restitution)**

83.     Plaintiff, on behalf of himself and the Class, re-alleges and incorporates by reference each and every allegation set forth in the preceding paragraphs, as though they are alleged in full herein.

84.     By its deceptive, misleading and unlawful conduct alleged herein, Chase unjustly received a benefit at the expense of Plaintiff and Class members.

85.     It is unjust to allow Chase to retain the profits from its deceptive, misleading and unlawful conduct alleged herein without providing compensation to Plaintiff and the Class.

86.     Chase acted with conscious disregard for the rights of Plaintiff and Class members.

87.     Plaintiff and members of the Class are entitled to restitution of, disgorgement of, and/or the imposition of a constructive trust upon, all profits, benefits, and other compensation obtained by Chase from its deceptive, misleading and unlawful conduct.

**PRAYER FOR RELIEF**

Plaintiff, on behalf of himself and the Class, requests that the Court order relief and enter judgment against Chase as follows:

1.     An order certifying the proposed Class and appointing Plaintiff and his counsel of record to represent the Class;

15
CLASS ACTION COMPLAINT

2.    An order that Chase be permanently enjoined from its improper conduct and practices alleged herein;

3.    A judgment awarding Plaintiff and members of the Class actual damages in an amount according to proof for Chase's breaches of its loan agreements and for all other of Chase's conduct alleged under all causes of action herein entitling Plaintiff and members of the Class to actual damages;

4.    A judgment awarding Plaintiff and members of the Class restitution, including, without limitation, disgorgement of all profits and unjust enrichment obtained by Chase as a result of its unlawful, unfair, and fraudulent business practices and conduct alleged herein;

5.    A judgment awarding Plaintiff and members of the Class exemplary damages for Chase's knowing, willful, and intentional conduct, as alleged herein;

6.    Declaratory relief that any purported arbitration agreement between the Class and Defendant is void and unenforceable.

7.    Prejudgment and post-judgment interest;

8.    Attorneys' fees, expenses, and the costs of this action; and

9.    All other and further relief as the Court deems necessary, just and proper.

### JURY DEMAND

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury for all issues so triable under the law.

DATED: March 11, 2009          **GREEN WELLING LLP**

By: _____
Charles D. Marshall

Robert S. Green
595 Market Street, Suite 2750
San Francisco, CA 94105
Telephone: (415) 477-6700
Facsimile: (415) 477-6710

Attorneys for Plaintiff

16
CLASS ACTION COMPLAINT

# IMPORTANT NOTICE REGARDING CHANGES TO YOUR ACCOUNT

We're sending you this notice to advise you of some new changes to your credit card account. These changes will take place automatically and will be effective with your January 2009 statement.

Here's a summary of the key changes:

- A new Account Service Charge of $10 per month will be applied to your account.

- Your minimum payment due will increase from 2% to 5% of the ending balance on your monthly statement. As a result, your required monthly minimum payment will increase.

Important: Your APRs will not be impacted by these changes.

Remember:

- If you are enrolled in Chase Automatic Payments and have selected the minimum payment option, your minimum payment will automatically be increased to reflect the new minimum payment due changes.

- Also, if you have your payments sent to us automatically from another bank, remember to adjust the amount for this new minimum payment required to keep your account in good standing.

The key factors we considered when making these changes include the current APRs and revolving balances associated with your account.

If you have any questions regarding these changes, please contact us by calling the customer service number on the back of your card.

Below you'll find the official amendments to the terms of your Cardmember Agreement. Please read all of the information and keep this notice for your records.

## 1. AMENDMENTS TO YOUR AGREEMENT

These changes will be effective on or after the first day of your billing cycle that includes              . They will apply automatically to current and future balances on your account. Any other terms on your account not described in this notice continue to apply.

## a. ACCOUNT SERVICE CHARGE. The FINANCE CHARGES section of your Agreement is amended to add the following new section:

**Account Service Charge:** Your account has a service charge, which will be billed monthly (as stated in the Rates and Fees Table). This charge is owed whether or not you use your account, and you agree to pay it when billed. These charges are **finance charges**, and are added to the balance for purchases on your account. The monthly service charge is nonrefundable unless you notify us that you wish to close your account within 30 days of the date we mail your billing statement on which the service charge is imposed and at the same time, you pay your outstanding balance in full. Your payment of the service charge does not affect our

INW13465
ADV3856

*Continues on next panel*

*Continued from previous panel*

right to close your account or limit your right to make transactions on your account. If your account is closed by you or us, we will continue to charge the service charge until you pay your outstanding balance in full and terminate your account relationship.

**FINANCE CHARGES AND FEES.** The **Finance Charges and Fees** below amend your **Rates and Fees Table.**
Service Charge – **Finance Charge:** $10 per month ($120 total annually)

**b. MINIMUM PAYMENT.** The portion of the **Minimum Payment** section of your Agreement that shows your minimum payment calculation is amended to read as follows:

Your billing statement shows your beginning balance and your ending balance (the "New Balance" on your billing statement). If the New Balance is $10.00 or less, your minimum payment due will be the New Balance. Otherwise, it will be the largest of the following: $10.00; 5% of the New Balance, or the sum of 1% of the New Balance, total billed periodic rate finance charges, and any billed late fees. As part of the minimum payment due, we also add any amount past due and any amount over your credit line/credit access line.

## 2. ANNUAL RENEWAL NOTICE
The account service charge  is billed to your account monthly whether or not you use your account, and you agree to pay it when billed. The charge is $10 per month ($120 total annually), and it is a **finance charge.** The charge is non-refundable unless you notify us that you wish to close your account within 30 days of the date we mail your statement on which the charge is imposed and at the same time, you pay your outstanding balance in full. If you do this, you will not owe the last billed  service charge; however, prior billed service charges are non-refundable and must be paid to pay your outstanding balance in full. Your payment of the service charge does not affect our rights to close your account and to limit your right to make transactions on your account. If your account is closed by you or us, we will continue to impose the service charge each month until you pay your outstanding balance in full and terminate your account relationship.

## 3. OTHER NOTICES
The principal factors we considered in amending your account include the APRs and revolving balances on your account. The federal Equal Credit Opportunity Act prohibits creditors from discriminating against credit applicants on the basis of race, color, religion, national origin, sex, marital status, age (provided the applicant has the capacity to enter into a binding contract); because all or part of the applicant's income derives from any public assistance program; or because the applicant has in good faith exercised any right under the Consumer Credit Protection Act. The federal agency that administers compliance with this law concerning this creditor is the Office of the Comptroller of the Currency, Customer Assistance Group, 1301 McKinney Street, Suite 3450, Houston, TX 77010-9050.

**If you have any questions about these amendments, please contact us at the number on the back of your credit card**, or write to Cardmember Service, P.O. Box 15098, Wilmington DE, 19850-5098.

Chase Bank USA, N.A.
November 2008

